**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| Savis, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.: 18-cv-6521 |
| v. | ) | |
| | ) | Honorable Joan B. Gottschall |
| Neftali Cardenas, | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

This dispute involves a noncompetition clause in an employment agreement.  Plaintiff

Savis, Inc. ("Savis"), provides consulting and manufacturing support services to clients in the

pharmaceuticals industry.  *See* Def.'s Resp. in Opp'n to Pl.'s LR 56.1 Stmt. of Material Facts in

Supp. of Mot. Summ. J. ("Resp. to SOF") ¶ 20, Dkt. No. 163.  Savis hired defendant Neftali

Cardenas ("Cardenas") in 2016 as a "capital project engineer" providing services to Pfizer, a

Savis client, at Pfizer's facility in McPherson, Kansas ("McPherson facility").  Resp. to SOF

¶¶ 8, 10.  Cardenas worked at the McPherson facility for Savis until he resigned to take a job

with Pfizer at the same facility in September 2018.  *See id.* ¶¶ 11-12.  Shortly after Cardenas

resigned, Savis filed this diversity suit against Cardenas and moved for a temporary restraining

order ("TRO") and preliminary injunction enforcing non-competition and duty of loyalty clauses

in employment agreements signed by Cardenas in June 2018.  *See id.* ¶¶ 4–5 (setting forth text of

clauses).  The court held a hearing and denied Savis's motion.  *Savis, Inc. v. Cardenas* (*Savis I*),

2018 WL 5279311 (N.D. Ill. Oct. 24, 2018).  The parties then conducted discovery.

The court has before it Savis's motion for summary judgment on the five counts of its

complaint.  Dkt. No. 139.  Savis seeks damages of at least $563,200 and equitable relief,

including a permanent injunction preventing Cardenas from working for Pfizer. *See id.* at 4-5. For the reasons that follow, the court grants the motion in part and denies it in part. The court enters summary judgment that Cardenas is liable for the breach of contract claim alleged in count I of the complaint, but genuine factual disputes exist as to Savis's claimed damages.

## I. Background

Savis pleads five claims in its complaint. *See* Compl. 13-22, Dkt. No. 1. In counts I and II, Savis alleges that Cardenas breached employment contracts signed in June 2018 (see Part I.A below). Compl. 13-18. The remaining three counts assert claims for breach of fiduciary duty (count III), breach of the implied covenant of good faith and fair dealing (count IV), and "tortious interference with contracts, business relationships, and expectations" (count V). Compl. 18-22. Except where noted otherwise, the court summarizes the facts in the light most favorable to Cardenas and draws all reasonable inferences in his favor. *See, e.g, Rowlands v. United Parcel Serv. - Ft. Wayne*, 901 F.3d 792, 795 (7th Cir. 2018) (citing *Malin v. Hospira, Inc.*, 762 F.3d 552, 554 (7th Cir. 2014)); *see also* Part II.A below (setting forth summary judgment standard).

### A. Contractual Language

Two contracts are at issue here. Resp. to SOF ¶¶ 4–5; Pl.'s Exs. D, E. The first is a memorandum entitled "Renewal Offer of Employment" dated May 31, 2018 ("renewal offer") and signed by Cardenas on June 5, 2018. Resp. to SOF ¶ 4; Pl.'s Ex. D. The renewal offer was contingent on Cardenas signing Savis's full employment contract ("employment contract") entitled "Savis Renewal of contract full [sic] Agreement NDA, NCA, and NSA." Pl.'s Ex. D at 2; Pl.'s Ex. E. Cardenas signed the employment contract on June 6, 2018. Resp. to SOF ¶ 5;

Pl.'s Ex. E.  In consideration for signing these contracts, Savis increased Cardenas's annual

salary by $5,000 to $75,000.  Resp. to SOF ¶ 4.

> The renewal offer contained the following language at issue here:
>
> Employee agrees that during Employee's employment with the Company, Employee will:
>
> 1.1.  Owe a duty of loyalty to the Company and will devote Employee's full working time, attention and efforts to the business and affairs of the Company.
>           . . . .
> 1.3.  Will not directly or indirectly engage in any business activity competitive with the Company's business or divert any business opportunity related to the Company's business form [sic] the Company.
>           . . . .
> 1.7.  Any dispute arising from this offer or employment will be disputed in the state of Florida under Florida law.

*Id.* ¶ 4 (quoting Pl.'s Ex. D at 1, 3).

Cardenas's full employment contract contained a separate choice of law clause: "This

agreement will be governed, construed and enforced in accordance with the laws of the State of

Florida."  *Id.* ¶ 5 (quoting Pl.'s Ex. E ¶ 10(c)).  Paragraph eight of the employment contract

contains a non-competition clause:

> 8. <u>Non-Compete</u>
>
> Employee recognizes the Company's legitimate interest in protecting, for a reasonable period of time after employment, existing clients and prospective clients of the Company with which Employee becomes involved or as to which Employee acquires Confidential Information during employment with the Company. Employee agrees, during the time the Employee is providing services for the Company and for a period of two (2) years after the termination of services, whether termination is voluntary or involuntary, Employee shall not—without the Employer's prior written consent—directly or indirectly, market, offer, sell or furnish any products or services similar to, or otherwise competitive with, those offered by the Company to any client of the Company, or any prospective client of the Company with which Employee was involved or as to which Employee acquired Confidential Information.  Employee further agrees, during the time Employee is providing service for the Company and for the two (2) year period after the termination of services, whether voluntary or involuntary, Employee shall not - without the Employer's prior written consent - directly or indirectly, market, offer,

sell or furnish any products or services to a competitor of Company if Employee's duties at the competitor are materially similar to those duties of Employee while employed with the Company. Competitors include, but are not limited to, the following companies and their subsidiaries or affiliates: Amgen, Ben Venue Laboratories, Boehringer-Ingelheim, Agilent, SANDOZ, Novartis, Grifols, Stantec, J.M. Hyde, Mangan, Commissioning Agents Inc., Matrix, Wunderlich Malek, Vista Engineering, Quantic, Beepix, PharmEng, ValSource, Kelly Services, CRB, Jacobs, Avexis, Bayer, Genentech, Gilead, Pfizer, Medtronic, Medimune, RTD.

Employee acknowledges that this restriction is necessary because Employee's position with the Employer would make it impossible for Employee to work for a competitor without disclosing the Employer's Confidential Information, interfering with the Employer's customer relationships, or otherwise violating Employee's obligations under this Agreement. Employee further acknowledge that the Employer does business with customers throughout the United States and in foreign countries, so it is impossible to restrict more narrowly the geographic scope of Employee's obligation not to compete with the Employer. The provisions of this Paragraph shall survive the termination of this Agreement for any reason.

Pl.'s Ex. E at 5.

### B. Procedural History

This court's prior opinions discuss the procedural history in detail. *See Savis, Inc. v. Cardenas* (*Savis II*), 2020 WL 4736411, at *1–2 (N.D. Ill. Aug. 14, 2020); *Savis I*, 2018 WL 5279311, at *1. Cardenas presently represents himself. The court recruited counsel for Cardenas shortly after this case was filed. At that time, the record made clear that Cardenas "had a substantial income until recently. But he also recently accepted a position with a new employer, and the purpose of plaintiff's [then pending] motion for a temporary restraining order and preliminary injunction [was] to prevent defendant from working for his new employer." Dkt. No. 20 (Oct. 3, 2018).

Savis's motion for a preliminary injunction was denied on October 24, 2018, and discovery began. At the conclusion of discovery, it became clear that Cardenas was no longer eligible for recruited counsel, although the court was persuaded that while Cardenas had means and was not indigent, his modest means were insufficient to retain counsel for a case of this complexity. Nevertheless, the court felt itself compelled to discharge Cardenas's recruited lawyer in September 2019, leaving him self-represented, a.k.a. *pro se*.

*Savis II*, 2020 WL 4736411, at *1 (citations omitted).

Following the conclusion of discovery and unsuccessful settlement efforts, *see id.*, Savis filed its pending motion for summary judgment in June 2020. Dkt. No. 139. Cardenas filed an untimely and facially deficient pro se summary judgment response, which prompted the court to inquire into the sufficiency of the notice given to him of the consequences of failing to respond adequately to a summary judgment motion. *See Savis II*, 2020 WL 4736411, at *1-2. This court ruled that although Cardenas had been sent the notice to pro se litigants then required by this court's Local Rule 56.2 (since amended), the notice did not satisfy Seventh Circuit case law on the due process rights of self-represent litigants at summary judgment. *Id.* at *2-4 (discussing *Timms v. Frank*, 953 F.2d 281 (7th Cir. 1992), and *Lewis v. Faulkner*, 689 F.2d 100 (7th Cir. 1982)). This court provided Cardenas the notice required by *Timms* and *Lewis* and set a deadline for him to file a response to Savis's summary judgment motion. *See id.* at *4.

Cardenas then timely filed a declaration signed under penalty of perjury, Dkt. No. 163-1, and two quite different documents, both entitled "Defendant's Response in Opposition to Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment," Dkt. Nos. 163 and 164. Savis filed a reply memorandum of law, Dkt. No. 167, and a separate reply, Dkt. No. 168, to Cardenas's response to its statement of undisputed material facts.

## II. Summary Judgment Standard and Fact Statements

### A. *Summary Judgment Standard*

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to any material fact exists if "the evidence is such that a

5

reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At summary judgment, the court considers "all of the evidence in the record in the light most favorable to the non-moving party," and draws "all reasonable inferences from that evidence in favor of the party opposing summary judgment." *Donald v. Wexford Health Sources, Inc.,* 982 F.3d 451, 457 (7th Cir. 2020) (citing *Dunn v. Menard, Inc.*, 880 F.3d 899, 905 (7th Cir. 2018)).

The party seeking summary judgment bears the initial burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Modrowski v. Pigatto*, 712 F.3d 1166, 1168 (7th Cir. 2013) (explaining that Rule 56 "imposes an initial burden of production on the party moving for summary judgment to inform the district court why a trial is not necessary" (citation omitted)). After "a properly supported motion for summary judgment is made, the adverse party must" go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 250 (quotation omitted); *see also Modrowski*, 712 F.3d at 1169 (stating party opposing summary judgment "must go beyond the pleadings (*e.g.,* produce affidavits, depositions, answers to interrogatories, or admissions on file), to demonstrate that there is evidence upon which a jury could properly proceed to find a verdict in her favor") (citations and quotations omitted).

### B. Local Rule 56.1 Statements

As this court's August 14, 2020, memorandum opinion and order explained in detail, Local Rule (sometimes "LR") 56.1 governs summary judgment practice in this district. *See generally Cracco v. Vitran Express, Inc*., 559 F.3d 625, 632 (7th Cir. 2009). Local Rule 56.1 exists "not to make busywork [for counsel and parties] but instead 'to alert the court to precisely what factual questions are in dispute and point the court to the specific evidence in the record

6

that supports a party's position on each of these questions.'" *Hinterberger v. City of Indianapolis*, 966 F.3d 523, 527 (7th Cir. 2020) (quoting *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 923 (7th Cir. 1994)).  Thus, the Seventh Circuit "has repeatedly recognized that district courts may require exact compliance with their local rules." *Allen-Noll v. Madison Area Tech. Coll.*, 969 F.3d 343, 349 (7th Cir. 2020) (collecting cases).  Consistent with the purpose of LR 56.1, however, this court has "broad discretion" to relax or enforce strictly local rules governing summary judgment practice. *Edgewood Manor Apt. Homes, LLC v. RSUI Indem. Co.*, 733 F.3d 761, 770 (7th Cir. 2013) (citing *Modrowski,* 712 F.3d at 1169); *see also Cracco*, 559 F.3d at 632.  "It is particularly appropriate to exercise such discretion when the nonmovant is proceeding *pro se*." *Parson v. Loc. 1, UNITE HERE, AFL-CIO*, 2006 WL 1430554, at *1 (N.D. Ill. May 17, 2006) (citations omitted).

As Savis notes, Cardenas did not file a document titled "memorandum of law" opposing summary judgment.  *See* LR 56.1(b)(2).  "When determining the character of a pro se filing, … courts should look to the substance of the filing rather than its label." *United States v. Antonelli*, 371 F.3d 360, 361 (7th Cir. 2004) (per curiam) (citing *Gleash v. Yuswak*, 308 F.3d 758, 761 (7th Cir. 2002) (other citation omitted)).  Cardenas filed two very different documents with the same title, "Defendant's Response in Opposition to Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts in Support of its Motion for Summary Judgment." *Compare* Dkt. No. 163 *with* Dkt. No. 164.  Cardenas formatted the first document with numbered paragraphs corresponding to plaintiff's statement of undisputed material facts. *See* Dkt. No. 163.  He makes legal and factual arguments in the second document and cites case law. *See* Dkt. No. 164.  In its reply, Savis engages with the latter document as though it is a memorandum of law, so the court

does as well. *See* Dkt. No. 167. The court therefore construes the second filing as Cardenas's response memorandum of law under LR 56.1(b)(2).

Savis made a more serious LR 56.1 misstep when it filed a reply, Dkt. No. 168, to Cardenas's response to Savis's statement of undisputed material facts. Savis's reply contains a paragraph corresponding to each numbered paragraph of Cardenas's response and, in some cases, legal argument and citations to evidence to which Cardenas has not had the opportunity to respond. *See, e.g*, Dkt. No. 168 ¶¶ 19, 21, 58, 63. Local Rule 56.1(a) specifies when the party moving for summary judgment may file a reply to the opposing party's response to the movant's statement of undisputed material facts: "If additional material facts are submitted by the opposing party pursuant to section (b), the moving party may submit a concise reply in the form prescribed in that section for a response." Cardenas listed no additional facts in his LR 56.1(b)(3) response. *See* Resp. to SOF 33. So LR 56.1(a) did not authorize Savis to file a reply, and the court will not consider it. *See, e.g.*, *Levin v. Grecian*, 974 F. Supp. 2d 1114, 1117–18 (N.D. Ill. 2013); *Cent. Transp. Int'l, Inc. v. Patriot Int'l Forwarding, Inc.*, 2006 WL 8461437, at *3 (N.D. Ill. Mar. 27, 2006).

### C. The Admissibility of Paragraph Nine of Cardenas's Declaration

Cardenas submitted just one exhibit with his response to Savis's statement of undisputed facts: his own declaration. *See* Dkt. No. 163-1. Throughout its reply, Savis argues that the averments in paragraph nine of Cardenas's declaration must be disregarded because they are "conclusory," and he does not "point to the record" to support them. Reply to Def.'s Resp. to Mot. Summ. J. 4, 5, Dkt. No. 167. Savis cites no legal authority in support of this argument. *See id.* That is sufficient reason to disregard the argument, as is the fact that it was made for the first time in a reply, and Cardenas has therefore been deprived of an opportunity to respond to it. *See,*

8

*e.g.*, *Brownlee v. Cath. Charities of the Archdiocese of Chi.*, 2020 WL 977968, at *2-3 (N.D. Ill. Feb. 28, 2020).

Furthermore, paragraph nine of Cardenas's declaration reads in full:

9.  I was not exposed to nor did I use confidential information from Savis in any form including templates and SOPs in order to fulfill any duty at the client's requests.  I did not use Savis resources, confidential information, SOPs, or templates to update operational SOPs and Batch Records for audit trail review procedures, critical parameter verification, documentation attribution, back up procedures, periodic reviews, and network trending at any point.  I used the client [sic] own templates and SOPs.

Dkt. No. 163-1 ¶ 9.  Contrary to Savis's unsupported contention that paragraph nine must be supported by other record evidence, a party's "self-serving affidavit should be considered . . . when it meets the requirements of evidence on summary judgment."  *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 506 (7th Cir. 2004) (citation omitted) (reversing decision to exclude portion of plaintiff's affidavit).  Savis does not suggest that Cardenas's declaration fails the test of admissibility at summary judgment, and such an argument would not be supportable.  *See* Reply to Def.'s Resp. to Mot. Summ. J. 4.  Read in context, Cardenas's declaration is based on personal knowledge, Dkt. No. 163-1 at 1, and it sets forth specific, admissible facts in paragraph nine relevant to the analysis of counts I and II (see below).  *See Hill v. Tangherlini*, 724 F.3d 965, 967-68 (7th Cir. 2013); *Buie*, 366 F.3d at 506.

Under what is sometimes called the sham affidavit rule, "where deposition testimony and an affidavit conflict, 'the affidavit is to be disregarded unless it is demonstrable that the statement in the deposition was mistaken, perhaps because the question was phrased in a confusing manner or because a lapse of memory is in the circumstances a plausible explanation for the discrepancy.'"  *Dunn*, 880 F.3d at 910-11 (quoting *Russell v. Acme–Evans Co.*, 51 F.3d 64, 67-68 (7th Cir. 1995)).  But Savis does not suggest that paragraph nine contradicts deposition

testimony or any other evidence. *See* Reply to Def.'s Resp. to Mot. Summ. J. 4. As the Seventh Circuit has "repeatedly emphasized, . . . the term 'selfserving' must not be used to denigrate perfectly admissible evidence through which a party tries to present its side of the story at summary judgment." *Hill*, 724 F.3d at 967 (citations omitted). Following this guidance, the court considers paragraph nine of Cardenas's declaration.

### III. Choice of Law

This court has subject matter jurisdiction over this suit based on the parties' diversity of citizenship. *See* 28 U.S.C. § 1332(a); Compl. 2; Resp. to SOF ¶ 3. In a diversity suit, the court applies the choice of law rules of the forum state, here Illinois. *E.g., Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487 (1941)). Illinois generally follows the Restatement (Second) of Conflict of Laws (Am. L. Inst. 1971) ("Second Restatement"). *Gunn*, 968 F.3d at 808 (citing *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007)).

"In a diversity case involving a contract that stipulates which state's law is to govern, a federal court must follow state law in deciding whether to enforce the stipulation." *Skyrise Constr. Grp., LLC v. Annex Constr., LLC*, 956 F.3d 950, 956 (7th Cir. 2020) (citing *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 426 (7th Cir. 1991)). Under Illinois choice of law rules, a contract's choice of law clause will be respected "as long as the contract is valid and the law chosen is not contrary to Illinois's fundamental public policy." *Thomas v. Guardsmark, Inc.*, 381 F.3d 701, 705 (7th Cir. 2004). For tort claims that do not depend on a contract, "the Second Restatement . . . chooses the law of the state which, 'with respect to that issue, has the most significant relationship to the occurrence and the parties.'" *Gunn*, 968 F.3d at 809 (citing Second Restatement § 145(1)).

Savis sorts the five counts of its complaint into two groups for choice of law purposes: (1) the breach of contract claims in counts I and II; and (2) the claims in counts III-V, which it labels tort claims. Savis contends that under the employment agreement's choice of law clause, Florida law governs the breach of contract claims in counts I and II. Mem. Supp. Mot. Summ. J. 11-14, Dkt. No. 141. Savis applies the most significant relationship test to counts III-V and argues that the test points to Kansas law. *Id*. at 37–40.

Cardenas does not conduct a choice of law analysis in response. *See* Resp. to Mot. Summ. J. (retitled), Dkt. No. 164. Neither does he argue that any other state's law applies to any claim. *See id.* Rather, he cites cases applying Florida and Kansas substantive law. *See id.* at 5-7.

As Savis argues in its reply, Dkt. No. 167 at 1-2, "[t]he choice-of-law issue is waived if a party fails to raise it." *Ward v. Soo Line R.R. Co.*, 901 F.3d 868, 880 (7th Cir. 2018) (citing *McCoy v. Iberdrola Renewables, Inc*., 760 F.3d 674, 684 (7th Cir. 2014)). The court is not required to accept Savis's choice of law analysis, however. Despite a party's failure to brief adequately choice of law, a court may, but is not required to, reach the issue in the interests of justice. *See NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 300-01 (7th Cir. 2018); *Mass. Bay Ins. Co. v. Vic Koenig Leasing, Inc.*, 136 F.3d 1116, 1122-23 (7th Cir. 1998). Here, the court applies the waiver doctrine to the breach of contract claim in count I.[1] However, Savis inexplicably analyzes the breach of contract claim in count II under Kansas law, even though it argues that Florida law applies. *See* Mem. Supp. Mot. Summ. J. 37 (discussing *Denison State*

---

[1] A waiver is a "voluntary and intentional relinquishment of a known right." *PPM Fin., Inc. v. Norandal USA, Inc.*, 392 F.3d 889, 895 (7th Cir. 2004) (citation omitted) (Illinois law). Cardenas's failure to brief choice of law may have more to do with his pro se status than anything else. At the preliminary injunction phase, when Cardenas had recruited counsel, he vigorously contested choice of law as to counts I and II. *See Savis I*, 2018 WL 5279311, at *9-12.

*Bank v. Madeira*, 230 Kan. 684, 691 (1982)).  Since Savis does not analyze count II under the

law it contends applies, and since the issue is extremely complicated, the court will not attempt

to resolve it without the parties' assistance.

Furthermore, Savis's argument that Kansas law governs counts III, IV, and V suffers

from obvious defects that cannot be ignored.  To begin, Savis misclassifies count IV as a tort

claim.  Count IV pleads a claim for the breach of the implied covenant of good faith and fair

dealing.  Compl. 20.  As a matter of its own substantive law, "Illinois does not recognize an

action for violation of the implied covenant of good faith and fair dealing independent of a

breach of contract claim."  *LaSalle Nat'l Bank v. Metro. Life Ins. Co.*, 18 F.3d 1371, 1376 (7th

Cir. 1994) (citing *Anderson v. Burton Assocs., Ltd.*, 578 N.E.2d 199, 203 (Ill. 1991)).  However,

where a choice of law clause is enforceable under Illinois conflict of law rules, the law selected

by the clause governs a claim for breach of the implied covenant of good faith and fair dealing.

*See Life Plans, Inc. v. Sec. Life of Denver Ins. Co.*, 800 F.3d 343, 357 (7th Cir. 2015); *Amakua

Dev. LLC v. Warner*, 411 F. Supp. 2d 941, 948 (N.D. Ill. 2006); *River W. Meeting Assocs., Inc. v.

Avaya, Inc.*, 2004 WL 422683, at *2 n.3 (N.D. Ill. Mar. 4, 2004).  As a result, given the choice of

law clause in the parties' agreement, Florida's substantive law governs count IV.

For a different reason, Florida law also governs the tort claims in counts III and V.  Savis

fails to mention an important settled rule: "[I]n Illinois, 'tort claims that are dependent upon the

contract are subject to a contract's choice-of-law clause regardless of the breadth of the clause.'"

*NewSpin*, 910 F.3d at 306 (quoting *Medline Indus. Inc. v. Maersk Med. Ltd.*, 230 F. Supp. 2d

857, 862 (N.D. Ill. 2002)); *accord Gunn*, 968 F.3d at 808 (citing *Facility Wizard Software,

Inc. v. Se. Tech. Servs., LLC,* 647 F. Supp. 2d 938, 943 (N.D. Ill. 2009)).  To determine whether

a tort depends on the contract, courts look to "whether the action alleges a wrong based upon

12

interpretation and construction of the contract, or whether the claim alleges elements constituting an independent tort." *NewSpin*, 910 F.3d at 306 (quoting *Medline*, 230 F. Supp. 2d at 862) (other citation omitted). In the case at hand, Savis's briefing makes abundantly clear that its breach of fiduciary duty and tortious interference with business expectation claims depend on the 2018 employment agreement. *See, e.g.,* Mem. Supp. Mot. for Summ. J. 37 ("As a result of the Employment Agreement, a fiduciary duty was contractually created between Savis and Cardenas . . . ."); Reply to Def.'s Resp. to Mot. Summ. J 19. And "all of [Savis']'s allegations involve the parties' relationship as governed by the Agreement." *NewSpin*, 910 F.3d at 306 (holding that choice of law clause applied to tort claims for this reason). Accordingly, under a straightforward application of Illinois choice of law principles to Savis's summary judgment arguments, Florida's substantive law governs counts III and V as well as count IV.

But Savis has developed no legal argument under Florida law for entering judgment in its favor on counts III–V. *See* Mem. Supp. Mot. Summ. J. 37–40. Savis confines its arguments for summary judgment on counts III–V to a contention that it wins under Kansas law. *See id.* The court will not conduct Savis's legal research and formulate arguments for it.[2] *See, e.g., Nelson v. Napolitano*, 657 F.3d 586, 590 (7th Cir. 2011). Instead, the court denies Savis's motion for summary judgment on counts III-V.

### IV. Breach of Contract Claims

A claim for breach of contract under Florida law requires proof of three familiar elements: "(1) a valid contract; (2) a material breach; and (3) damages." *Grove Isle Ass'n, Inc. v.*

---

[2] When it filed its opening memorandum, Savis could not assume that Cardenas would waive choice of law or that the court would rule in its favor on choice of law, particularly given the concerns expressed by this court about choice of law at the preliminary injunction stage. *See Savis I*, 2018 WL 5279311, at *10 (noting that Savis failed to analyze choice of law for its tort claims and stating that the court must "analyze each claim, determine what type of claim it is '(tort, contract, etc.)[,] and examine, for each separate claim' how the applicable factors and public policy apply." (citing *Erickson v. Baxter Healthcare, Inc.*, 94 F. Supp. 2d 907, 910-11 (N.D. Ill. 2009)).

*Grove Isle Assocs., LLLP,* 137 So. 3d 1081, 1094-95 (Fla. 3d DCA 2014) (quoting *Schiffman v. Schiffman*, 47 So. 3d 925, 927 (Fla. 3d DCA 2010)); *Beck v. Lazard Freres & Co., LLC*, 175 F.3d 913, 914 (11th Cir. 1999) (per curiam) (citing *Abruzzo v. Haller*, 603 So. 2d 1338, 1340 (Fla. 1st DCA 1992)). Cardenas does not dispute that he signed the contract Savis seeks to enforce in count I. Resp. to SOF ¶¶ 4-5. It is also undisputed that Cardenas has been working for Pfizer since September 24, 2018, as a process engineer in the technical services division at the McPherson facility. Resp. to SOF ¶¶ 11-12, 29.

At the preliminary injunction stage, Cardenas, through recruited counsel, vigorously disputed the enforceability of the noncompetition clause under the governing Florida statute and the legitimate business interests that justify enforcing such a clause in Florida. *See Savis I*, 2018 WL 5279311, at *9-12. However, in his pro se response memorandum, Cardenas does not analyze whether the clauses at issue are enforceable under Florida's, or any other state's, law. He contends that there are factual disputes on the breach and damages elements of counts I and II, so the court focuses on those issues here. *See* Resp. to Mot. Summ. J. 2–3.[3]

### A. *Breach of Non-Competition Clause*

As stated above, the noncompetition clause in Cardenas's employment agreement says that while an employee works for Savis and for two years after termination of employment, an employee "shall not - without the Employer's prior written consent - directly or indirectly, make, offer, sell or furnish any products or services similar to, or otherwise competitive with, those offered by the Company." Resp. to SOF ¶ 19 (quoting Pl.'s Ex. E ¶ 8). The Florida statute

---

[3] Savis also argues in its opening memorandum of law that it has several legitimate business interests recognized by Florida law that make the non-competition clause enforceable. *See* Dkt. No. 141 at 16–22; *see also generally Savis I*, 2018 WL 5279311, at *13. Because the issue has not been presented through adversary briefing and fact issues preclude summary judgment on other elements of counts I and II, the court does not decide today whether Savis has a legitimate business interest recognized by Florida law.

governing restrictive covenants contains the following rule:

> A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement. A court shall not employ any rule of contract construction that requires the court to construe a restrictive covenant narrowly, against the restraint, or against the drafter of the contract.

Fla. Stat. Ann. § 542.335(h) (West 2020). When it enacted this language, the Florida legislature overruled prior Florida cases applying rules of contract construction like those listed in the statute. *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1240 (11th Cir. 2009) (citation omitted).

There is no genuine dispute about what services Savis has provided to Pfizer at the MacPherson facility between 2014 and 2020. *See* Resp. to SOF ¶ 24 (partially disputed; alleged dispute discussed below). From 2014-17, Pfizer contracted with Savis for a defect monitoring project concerning a syringe production line at the MacPherson facility. *See id.* ¶¶ 31-32. Pfizer tasked Savis with monitoring the rate of defects, such as cracked glass, in packaging and suggesting ways to improve the manufacturing process. *Id.* ¶¶ 32. To identify defects, "operators" inspected syringes using a device called a light table. *Id.* Savis "executed test protocols for each lot of product for reinspection of the true defect rate." *Id.* To determine whether a breach occurred, the services Savis provides or offers must be compared to the services Cardenas provides to Pfizer. If a reasonable jury viewing the facts in the light most favorable to Cardenas could conclude that he does not provide similar or competitive services, then a fact issue exists. Unlike at the preliminary injunction stage, the record now contains more and clearer evidence concerning the services Savis offers and those Cardenas performs for Pfizer. *See Savis I*, 2018 WL 5279311, at *14.

*1. Services Provided or Offered by Savis*

In 2017, Pfizer contracted with Savis for a new project, referred to as the "data integrity project," applicable to the entire McPherson facility.  *See* Resp. to SOF ¶ 33.  "Data integrity is assuring all the data generated in the manufacturing process, is accurate, attributable to a person, legible, contemporaneous, and original."  *Id.* (citation omitted).  The purpose of this project was at least in part to maintain Pfizer's compliance with Title 21 of the Code of Federal Regulations, Part 11, which contains FDA regulations that govern electronic recordkeeping in the pharmaceutical industry.  *See id.* ¶ 27.  Savis was given the task of remediating the compliance issues it found at the McPherson facility.  *See id.* ¶ 33.  Savis created an inventory of the equipment at the McPherson facility, assessed each piece of equipment's compliance, generated reports for Pfizer, and analyzed solutions with Pfizer.  *See id.*  Savis also analyzed all of the environmental alarms at the McPherson facility (e.g., humidity, temperature, and differential pressure), summarized its findings, and proposed changes to standard operating procedures.  *See id.*

In addition to Pfizer, Savis submits evidence that it provided similar services to two other pharmaceutical clients at manufacturing sites in Cleveland, Ohio, and Oklahoma City, Oklahoma.  *See id.* ¶¶ 41-42 (undisputed).  In both contracts, Savis began by gathering data on a manufacturing process, compiled it, and suggested ways to improve the process.  *See id.*  In one of these projects, Savis began by helping the client address issues identified by the Food and Drug Administration in an audit.  *See id.* ¶ 42.

It is also undisputed that Cardenas was a "Capital Project Engineer" on the data integrity project, though whether he "ran" the project is disputed.  *See id.* ¶ 34.  Other than the dispute over whether he ran the project, Cardenas does not dispute that he performed data integrity

16

compliance assessments of over 200 pieces of manufacturing equipment, that he prepared reports for Pfizer's "Global Team," worked with Pfizer personnel to solve the problems he identified, and updated standard operating procedures. *See id.* ¶¶ 34-35. Cardenas disputes providing "Commissioning and Qualification" services other than between August 2016 and May 2017. *See id.* ¶ 35. "The International Society of Pharmaceutical Engineers ('ISPE') defines Commissioning & Qualification ('C&Q') as the process for establishing that manufacturing facilities and equipment are suitable for their intended purpose." *Id.* (citations omitted).

Cardenas does not dispute that Savis performed these services for Pfizer and other clients. *See id.* ¶¶ 31-33. He instead points to an undisputed portion of his declaration clarifying that two Pfizer "segments," "Pfizer Global Supply" and "Pfizer CenterOne," operate at the McPherson facility. Cardenas Decl. ¶ 6, Dkt. No. 163-1. Cardenas avers that he supports Pfizer Global Supply in his present role and that project data for Pfizer CenterOne projects are "off limits" and on a "need to know basis" to Pfizer Global Supply personnel. *Id.* This does not create a genuine dispute of material fact over what services Savis provided to Pfizer, however. Rather, these facts are relevant to the next step in the comparison: determining what services Cardenas provides.

   2.  *Services Cardenas Provides Pfizer*

The material facts concerning Cardenas's role with Pfizer are not in dispute:

37. Cardenas [sic] responsibilities as a Pfizer employee within the Technical Services department include: process monitoring and defect monitoring, supporting investigations, and assisting in regulatory audits of the U.S. Food and Drug Administration ("FDA"). As a process engineer Cardenas is responsible for supporting interdepartmental customers and implementation of innovative solutions to data driven process improvement.
. . .
38. In regards to defect monitoring, Cardenas as an employee of Pfizer, performs defect monitoring by using data from the Visual Inspection department of Pfizer McPherson. Cardenas works on manufacturing quality audit reports for the defect tracking trend system, environmental monitoring database developed through programming and a lot of visual inspections tracking defect performance. Cardenas obtains his data to review for the data driven process improvement from visual inspections. Cardenas testifies

> that visual inspection uses a light to inspect the product for defects. The data defects are then documented in a batch record. Cardenas will then transfer the data into programs, such as Minitab, to provide Pfizer with statistical models, which is the production process. The defects are looking at the quality and the vials itself.

Resp. to SOF ¶¶ 37-38 (internal citations omitted); *see also* Pl.'s Ex. G, Dkt. No. 142-7

(Cardenas's Pfizer job description).

Even viewing the evidence in the light most favorable to Cardenas, a reasonable jury

would be forced to conclude that Cardenas is providing services similar to or competitive with

services offered by Savis. For instance, one of the projects Savis performed for another client in

Oklahoma City required Savis to "evaluate the FDA observations to determine if the drug

product manufactured was acceptable to release for sale." Resp. to SOF ¶ 42 (citation omitted;

undisputed fact). It is undisputed that Cardenas's responsibilities in his current role at Pfizer

include supporting investigations and assisting with FDA regulatory audits like those with which

Savis assisted its Oklahoma City client. *See id.* ¶ 37.

Cardenas attempts to create a dispute of material fact by pointing to evidence that he uses

different "methods" and "tools" in his job with Pfizer than he did while he worked for Savis. *See*

*id.* ¶ 40 (citing Cardenas Decl. ¶ 10; Pl.'s Ex. B at 206:1–6). Cardenas also points out that he

supports a different Pfizer segment than does Savis. *See* Cardenas Decl. ¶ 6. But he does not

explain how these differences change the character of the services he is providing to Pfizer. *See*

*id.* Under Florida law and the non-solicitation clause's plain language, differences in

organizational structure and products are material only where they result in material differences

in the services offered by the employer and those provided by the former employee. *See*

*PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1228-29 (M.D. Fla. 2012); *cf. Quixote*

*Transp. Safety, Inc. v. Cooper*, 2004 WL 528011, at *2, 3 (N.D. Ill. Mar. 12, 2014) (Illinois law).

Despite not disputing that his job involves assisting with audits, Resp. to SOF ¶ 37, elsewhere in

his response to Savis's LR 56.1(a)(3) fact statement, Cardenas cites paragraph 18 of his declaration to establish that he does not assist with audits. Resp. to SOF ¶ 40. In context, Cardenas explains in this paragraph that he and his colleagues in the "technical process improvements" group provide data on a quarterly basis for "site leadership." Cardenas Decl. ¶ 18. Site leadership uses the data Cardenas and his colleagues produce to improve business processes, but as Cardenas puts it:

> The Visual Inspection Program at McPherson is continuously maturing and as [sic] part of a regulatory commitment. I support the maturity of the visual inspection program at McPherson Pfizer by analyzing annual performances for business strategic purposes for site leadership and making projections of expected defect rates through quarterly updates. The activity of reducing defects are conducted by Operations, iMEx (continuous manufacturing improvement department), and investigations department. I provide the data so other departments can make a data driven decision.

Cardenas Decl. ¶ 18. In the first place, Cardenas admits that he "supports" a program that is part of Pfizer's "regulatory commitment." *Id.* That is, he gathers data to assist "site leadership" with complying with 21 C.F.R. Part 11, a task which is at least similar to services Savis has offered Pfizer and other clients in the past. *See id.* Moreover, Cardenas's efforts to distance himself from the ultimate decisionmakers at Pfizer do not create a genuine factual dispute. It is undisputed he performed similar work for Pfizer decisionmakers when he was a Savis employee–making recommendations to Pfizer based on data gathered on defect rates in Pfizer's manufacturing processes. *See* Resp. to SOF ¶¶ 33, 37-38.

Accordingly, Cardenas has not created a genuine fact issue on whether he has breached the non-competition agreement. The contract's plain language requires only that he be providing services that are similar to those Savis offers or performs, and there is no genuine dispute that he is. Summary judgment on Cardenas's liability for breach of the non-competition clause is therefore granted.

### B. Damages and Causation

Savis requests at least $563,200 in damages.[4]  *See* Resp. to SOF ¶ 52.  Savis billed Pfizer $128 per hour for Cardenas's services at the time of his resignation.  *Id.*  Savis calculates its damages figure by multiplying Cardenas's hourly rate ($128) by forty-four hours per week for three years at fifty weeks per year.[5]  *See id.*  For reasons unknown, Savis allows that this figure should be reduced if an injunction issues prior to the third anniversary of Cardenas's departure.  Mem. Supp. Mot. Summ. J. 33-34.  As is the case with many of its arguments, Savis cites no legal authority in support of its request for damages.

Savis fails to carry its initial summary judgment burden on damages because the damages calculation it proposes ignores basic principles of Florida contract law.  Savis computes damages as net lost revenue, not profits, allegedly attributable to Cardenas's absence.  *See* Resp. to SOF ¶ 52.  Savis "may seek damages for any breaches of the enforceable restrictive covenants in the Agreement, but '[a]n award of damages for breach of contract is intended to place the injured party in the position he or she would have been in had the breach not occurred.'"  *Proudfoot Consulting Co. v. Gordon*, 576 F.3d 1223, 1242 (11th Cir. 2009) (quoting *Mnemonics, Inc. v. Max Davis Assocs., Inc.*, 808 So. 2d 1278, 1280 (Fla. 5th DCA 2002)).  Under this basic rule of contract damages, Savis must prove both that it sustained the losses it claims and that its "lost profits were a direct result of" Cardenas's breach.  *Id.* at 1243 (citing *Whitby v. Infinity Radio Inc.*, 951 So. 2d 890, 898 (Fla. 4th DCA 2007)).  Savis has not attempted to estimate its alleged lost profits, so it has failed to carry its initial summary judgment burden.  *See id.*; Resp. to SOF

---

[4] Savis also requests attorney's fees under a provision of the employment agreement, but it makes no attempt to quantify its fees.  *See* Mem. Supp. Mot. Summ. J. 34; *see also* Resp. to SOF ¶¶ 50-52.

[5] Savis does not explain why it picked a three-year cutoff when the non-competition clause facially lasts for two years after the employee departs.

¶ 52.

What is more, Cardenas has presented evidence raising a genuine fact issue as to causation. In *Proudfoot Consulting*, the trial judge found that the employer lost a project to a competitor that hired the defendant. *See Proudfoot Consulting*, 576 F.3d at 1242-45. The Eleventh Circuit, applying Florida law, reversed the damages award for insufficient evidence of causation, explaining that "the fact that [the former employer] would have been able to perform the work on the [potential] project does not, standing alone, show that [the former employer] would have obtained the project absent" the breach of the non-compete clause by the former employee. *Id*. at 1244. Here, Cardenas has similarly produced evidence that raises a genuine dispute over whether his departure caused Savis to lose any business. He avers that before he left Savis, he transferred his responsibilities to two people to continue performing his function on the data integrity project. *See* Resp. to SOF ¶¶ 50-52; Cardenas Decl. ¶ 14. Cardenas also avers that Savis hired an additional employee to support further projects after Cardenas's resignation. Cardenas Decl. ¶ 14. On the other hand, Savis presents evidence that it has been unable to find an engineer to replace Cardenas, but given the dispute about whether others took on Cardenas's duties, there is a fact dispute about whether a critical gap in proving causation exists here. Since a jury could find that other Savis personnel took over Cardenas's responsibilities on the data integrity project, Savis must present, but has not presented, evidence that there was in fact another slot Savis could have filled at Pfizer's McPherson facility after Cardenas's resignation. *See* Resp. to SOF ¶ 52. Thus, there is a fact question as to whether Cardenas's breach caused Savis to lose any profits. *See Proudfoot Consulting*, 576 F.3d at 1245-46.

### C. *Request for Permanent Injunction*

Finally, Savis's motion for summary judgment, but not its supporting memorandum and

reply, contains a skeletal request for permanent injunctive relief enforcing the non-competition clause. *See* Dkt. No. 139 at 4-5. As with its request for damages, Savis cites no legal authority in support of this request. *See id.*

Not only has Savis waived this issue by failing to develop an adequate legal argument in support of it, but the two-year non-competition clause in Cardenas's employment agreement has facially expired. *See* Pl.'s Ex. E at 5. Absent a tolling provision (none is present here), courts applying Florida law have consistently declined to issue forward-looking injunctions enforcing a non-competition clause that has expired by its own terms. *See, e.g., SCI Funeral Servs. of Fla., Inc. v. Henry*, 839 So. 2d 702, 706-07 (Fla. 3d DCA 2002); *Sanz v. R.T. Aerospace Corp.*, 650 So. 2d 1057, 1059-60 (Fla. 3d DCA 1995) (citing *Storz Broadcasting Co. v. Courtney*, 178 So. 2d 40, 42 (Fla. 3d DCA 1965)); *Milner Voice & Data, Inc. v. Tassy*, 377 F. Supp. 2d 1209, 1218-19 (S.D. Fla. 2005). Consistent with this authority, this court denies Savis's request for a permanent injunction because the non-competition has facially expired.

## IV. Conclusion

For the reasons stated, plaintiff's motion for summary judgment (Dkt. No. 139) is granted in part and denied in part. The request for entry of summary judgment on the question of defendant's liability for breach of contract under count I is granted. The motion is denied in all other respects.

Dated: March 23, 2021                                   /s/
                                                        Joan B. Gottschall
                                                        United States District Judge

22